IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19-_____ |
| v. | : | DATE FILED: _____ |
| JESSIE PETERS | : | VIOLATION:<br>18 U.S.C. § 371 (conspiracy to commit health care fraud – 1 count)<br>Notice of forfeiture |
| | : | |

# INFORMATION

## COUNT ONE

### (Conspiracy)

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this indictment:

1. "A-Lab," "C-Lab," and "DB-Lab" were laboratories in the state of Florida that provided urine sample testing and billed insurance companies for their services.

2. Defendant JESSIE PETERS was employed with or a partner in A-Lab, C-Lab, and DB-Lab. The existence of A-Lab and C-Lab pre-dated defendant PETERS' conspiracy with others known to the United States Attorney, while DB-Lab was created as part of defendant PETERS' fraudulent scheme with his co-conspirators, Person #1 and Person #2. Both C-Lab and DB-Lab operated out of the same Florida address.

3. Liberation Way was an entity which purported to provide treatment for individuals dealing with drug and alcohol addiction. Person #1, Person #2 and Person #3 founded Liberation Way in early 2015. Liberation Way had treatment centers in Yardley, Bala

1

Cynwyd, and Fort Washington, all in the Eastern District of Pennsylvania. Doctor #1 purported to be the "medical director" who was in charge of the treatment of all patients at the various Liberation Way facilities.

4. Medical providers providing care and treatment to patients at Liberation Way facilities were required to certify that (1) the services provided were medically necessary, (2) the services were personally provided by the person signing the form, or by one of his/her employees acting under the signer's direction, and (3) the information contained in the form was true, accurate, and complete. The provider's National Provider Identification ("NPI") number was included as a part of each submission.

5. Ramesh Sarvaiya, a medical doctor charged elsewhere, never treated, saw, or provided care to any patient at any Liberation Way facility. Nonetheless, Sarvaiya ordered, and participated in the ordering of, urine testing on samples obtained from Liberation Way patients, which urine samples were sent by Liberation Way staff for testing to laboratories in Florida, and which test results were forwarded back for inclusion in the medical files of patients ostensibly under the care of Doctor #1. Testing can be either "presumptive" or "definitive." Presumptive testing determined the drug that was in the patient's system. Definitive, also known as qualitative, testing determined the exact drug, and how much of it was in the sample.

6. Independence Blue Cross ("IBC"), Highmark Blue Shield ("Highmark"), CIGNA, and FEHBP Blue Cross plan were private insurance companies and health care benefit programs (collectively, "the Health Care Benefit Programs") as defined in 18 U.S.C. § 24(b), that is, they were private plans and contracts, affecting commerce, under which medical benefits,

items, and services were provided to eligible individuals. IBC also managed plans for patients who were participants in employee health plans covered by ERISA (Employee Retirement Income Security Act).

7. IBC, Highmark, CIGNA, and FEHBP Blue Cross plans were in "out-of-network" status, that is, providers not participating under the insurance plans for A-Lab, C-Lab, and DB-Lab, as well as for insureds who utilized Liberation Way services. As such, the Health Care Benefit Programs paid significantly higher fees for insured customers who utilized Liberation Way services, and to the Florida laboratories associated with defendant JESSIE PETERS to which Liberation Way sent the urine samples of the patients.

### The Conspiracy

8. From in or about July 2015 through in or about October 2016, in the Eastern District of Pennsylvania and elsewhere, defendant

**JESSIE PETERS**

conspired and agreed with others known and unknown to the United States Attorney, to knowingly and willfully execute a scheme to defraud health care benefit programs, and to obtain money and property of health care benefit programs by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, by causing to be submitted fraudulent health care insurance claims, in violation of Title 18, United States Code Section 1347.

### Manner and Means

9. It was part of the conspiracy that Person #1, Person #2 and Person #3

founded and designed Liberation Way specifically to operate in an "out-of-network" status for private insurers, thereby amassing large amounts of money in a short amount of time. It was further part of the scheme to target and recruit patients who either had policies with the Health Care Benefit Programs, or for whom a premium policy for health care benefits could be obtained from IBC.

10. Defendant JESSIE PETERS agreed with Person #1 and Person #2 that Liberation Way would ship the urine samples from the patients who attended Liberation Way locations in the Eastern District of Pennsylvania to PETERS' laboratories in Florida. They further agreed that the urine samples would be tested for a large, and correspondingly expensive, array of laboratory tests, and that, no matter the specific purported addiction of the individual patient, all urines would be tested for the same large array of drugs.

11. Defendant JESSIE PETERS agreed that he would kick back to Person #1 and Person #2 a percentage, that is, approximately 40%, of the money that the insurance companies paid the laboratories associated with defendant PETERS for conducting tests on the urine samples sent by Liberation Way.

12. Defendant JESSIE PETERS disguised the payments to Person #1 and Person #2 as "commission" and "consulting" payments made to apparently independent LLC companies, including "Al--- LLC," a company associated with Person #1, "H-- W-----s," a company associated with Person #2, and Philly 180, which purported to be a "consulting company," but which defendant PETERS well knew was a shell company established by Person #4, a relative of Person #2, solely to be a part of this scheme. None of these LLC companies

provided any consulting work to defendant PETERS or his laboratories.

13. Because the higher number of urine tests resulted in increased monies to defendant JESSIE PETERS, and consequently to Person #1 and Person #2, urine samples were collected from patients at Liberation Way on a repetitive and overly-frequent basis, so much so that defendant PETERS' laboratories were sometimes testing a subsequent urine sample for the same patient even before the results from a prior urine sample were completed and results communicated back to Liberation Way, before any test results from a prior urine sample could be forwarded to Doctor #1 for integration into any purported rehabilitation treatment plan, and much more frequently than was necessary to treat any addiction.

14. Person #1 solicited Ramesh Sarvaiya to be the doctor who would sign, and otherwise authorize, urine test requests and to certify that the tests were medically necessary, although Sarvaiya never saw any Liberation Way patient, participated in any way in the treatment of any patient, or went to any Liberation Way facility.

15. Defendant JESSIE PETERS, and others known to the United States Attorney, caused to be submitted fraudulent claims to the Health Care Benefits Programs for medically unnecessary urine testing services conducted by laboratories associated with defendant PETERS.

16. As a result of this fraudulent scheme, defendant JESSIE PETERS, and others known and unknown to the United States Attorney, caused to be submitted more than $9.5 million in fraudulent claims to the Health Care Benefit Programs and caused the Health Care Benefit Programs to incur losses of approximately $3,405,065.00.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendant

**JESSIE PETERS,**

and others known and unknown to the United States Attorney, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. In or about July 2015, defendant JESSIE PETERS met with Person #1 and Person #2 to discuss creating a scheme whereby Person #1 and Person #2 would send all the urine samples for patients attending Liberation Way facilities in the Eastern District of Pennsylvania for treatment of drug and alcohol addictions to drug-testing laboratories associated with defendant PETERS, in return for which defendant PETERS agreed to kick back a percentage, that is, approximately 40%, of the money obtained from the Health Care Benefit Programs to Person #1 and Person #2.

2. On or about July 28, 2015, defendant JESSIE PETERS forwarded documents that were provided to Ramesh Sarvaiya, in order to get Sarvaiya's signature on a "standing order – additional tests protocol" with A-Lab in Florida requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients, with an address in Bala Cynwyd, Pennsylvania.

3. On or about July 30, 2015, defendant JESSIE PETERS met with Person #2 and Person #4 to sign a contract, purportedly between "A. Solutions," a company in Florida associated with defendant PETERS, and Philly 180, a shell company established by Person #1, Person #2 and Person #4 to be the repository for the kick back payments. Defendant PETERS knew that Philly 180 would not actually perform any of the terms of the contract, particularly, "market [A. Solutions]'s services to potential clients."

4. On or about July 30, 2015, Person #4 established a PNC bank account for Philly 180 with a $100 deposit.

5. On or about August 3, 2015, defendant JESSIE PETERS forwarded documents from A-Lab in Florida to be provided to Ramesh Sarvaiya, in order to get Sarvaiya's signature on documents requesting testing of urine samples for Liberation Way patients.

6. On or about November 16, 2015, defendant JESSIE PETERS forwarded documents to be provided to Ramesh Sarvaiya, in order to get Sarvaiya's signature on a "screening protocol" document with C-Lab in Florida requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients.

7. On or about January 13, 2016, defendant JESSIE PETERS forwarded documents to be provided to Ramesh Sarvaiya, in order to get Sarvaiya's signature on a "screening protocol" document with DB-Lab in Florida requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients.

8. From in or about August 2015 through October 2016, defendant JESSIE PETERS, and others known and unknown to the United States Attorney at the laboratories associated with defendant PETERS received urine samples and testing requests from Liberation Way and conducted presumptive as well as extensive qualitative testing of all urine samples submitted for Liberation Way patients, without regard for the results of the presumptive testing, and without regard for the specific needs of the individual patient in order to accumulate the most expensive insurance billing opportunities for defendant PETERS, and the laboratories with which he was associated, to submit to the Health Care Benefit Programs.

9-19. On or about the following dates on the below-referenced checks, defendant JESSIE PETERS sent, and caused to be sent, a check to Person #4 for a sum of money, intended for Person #1 and Person #2, which amount of money noted below represented a percentage of the inflated fraudulent billing proceeds from the Health Care Benefit Programs obtained as a result of the scheme to test urine samples of Liberation Way patients for medically unnecessary and extensive qualitative testing:

| OVERT ACT # | DATE ON CHECK | CHECK PAYEE | WRITTEN ON LAB ACCOUNT | CHECK AMOUNT | NOTATION ON CHECK |
|---|---|---|---|---|---|
| 9. | 10-15-2015 | Philly 180 | C-Lab | $3,305.04 | September 2015 |
| 10. | 11-16-2015 | Philly 180 | C-Lab | $20,330.74 | September 2015 |
| 11. | 12-17-2015 | Philly 180 | C-Lab | $52,072.68 | Commissions |
| 12. | 01-20-2016 | Philly 180 | C-Lab | $74,026.54 | Commissions |
| 13. | 02-23-2016 | Philly 180 | C-Lab | $61,763.01 | Commissions |
| 14. | 03-22-2016 | Philly 180 | C-Lab | $144,470.16 | |
| 15. | 04-25-2016 | Philly 180 | C-Lab | $173,523.15 | Commissions |
| 16. | 05-27-2016 | Philly 180 | C-Lab | $81,538.32 | |
| 17. | 06-28-2016 | Philly 180 | C-Lab | $71,281.54 | |
| 18. | 07-21-2016 | Philly 180 | C-Lab | $41,138.83 | |
| 19. | 08-22-2016 | Philly 180 | C-Lab | $83,368.91 | July |

20. On or about June 6, 2016, defendant JESSIE PETERS sent, and caused to be sent, a wire for $81,538.32 from the bank account of "A. Hold--- 7, LLC," a management account associated with C-Lab, to the PNC bank account of Philly 180. This wire was in lieu of the check referenced in Overt Act #16 which "bounced," that is, was not honored by PNC Bank because of inadequate funds in the C-Lab account on which the check was drawn.

21-25. On or about the following dates on the below-referenced checks, defendant JESSIE PETERS sent, and caused to be sent, checks to Person #1 and Person #2, made out to them individually and to LLCs associated with Person #1 and Person #2, after Person #1, Person #2, Person #3, and Person #4 decided to no longer use Philly 180 as a vehicle by which to receive the kickback payments, in an amount noted below which represented a portion of the inflated fraudulent billing proceeds from the scheme to test urine samples of Liberation Way patients for medically unnecessary and extensive qualitative testing:

| OVERT ACT # | DATE ON CHECK | CHECK PAYEE | WRITTEN ON LAB ACCOUNT | CHECK AMOUNT | NOTATION ON CHECK |
|---|---|---|---|---|---|
| 21. | 09-06-2016 | Person #2 | DB-Lab | $25,000.00 | |
| 22. | 09-07-2016 | Person #1 | DB-Lab | $51,633.33 | consulting |
| 23. | 09-20-2016 | H—W----s LLC | C-Lab | $90,340.75 | |
| 24. | 09-20-2016 | Al--- LLC | C-Lab | $90,340.75 | |
| 25. | 10-28-2015 | Al--- LLC | A. Solutions | $128,462.84 | |

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

1. As a result of the violation of Title 18, United States Code, Section 371 set forth in this indictment, defendant

**JESSIE PETERS**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court; or

   d. has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

*[signature]*
for WILLIAM M. MCSWAIN
United States Attorney